# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TROY MARCELLO TOLSON,   :
            :
   Plaintiff,     :
            :
  v.        :   Civil Action No. 12-0120 (CKK)
            :
CRAIG L. STANTON,    :
            :
   Defendant.    :

## MEMORANDUM OPINION

Plaintiff filed this civil action in the Superior Court of the District of Columbia on January 5, 2012, and defendant removed this action on January 25, 2012. This matter now is before the Court on plaintiff's motions for injunctive relief, and the motions will be denied.

## I.  BACKGROUND

Plaintiff "is an employee of the Department of Education [whose] first line supervisor is Charles Laster and [whose] second line supervisor" is defendant Craig Stanton. Mem. in Supp. of Def.'s Opp'n to Pl.'s Mot. for TRO & Prelim. Inj., Aff. of Craig Stanton ("Def.'s Aff.") ¶ 2. Defendant is "a non-attorney supervisor . . . in the Office of the Chief Financial Officer (OCFO)[] at the Department of Education," Def.'s Aff. ¶ 1, and he represents that the "matters underlying the allegations in the complaint are incidents that occurred in federal work spaces over which [he] is responsible." *Id.* ¶ 3.

According to plaintiff, defendant has stalked him and "follow[ed him] around, even to the bathroom," and when confronted, defendant allegedly continued this behavior "at a more frequent and intense rate." Compl. at 2 (page numbers designated by the Court). In addition,

1

defendant allegedly assaulted plaintiff on four occasions, *see id.* at 5, two of which resulted in injuries to plaintiff's knee, *see id.* at 4-6.

One incident occurred on June 21, 2011.  Plaintiff describes the incident as follows:

On the very first day of my return to the office after being out of the office for 8 weeks after major abdominal surgery, the [defendant] and a [sic] unnamed cooperator request [sic] my presence in a meeting 5 minute[s] after my arriva[l] to my surprise the meeting commenced with a barrage of personal attacks and insults.  I had thing [sic] thrown at me and I was spit on repeatedly.  I was overwhelmed so quick that before I knew it, again, the [defendant] came up behind me as I was looking in another direction a [sic] begun kicking me, kneeing me and using his lever[age] an [sic] body weight to essential [sic] "pins" me in the seat.  Although this time the seat did not have wheels.  In order to free myself I had to push past him.  As I did so, he tripped me and [illegible] struck me with his elbow multiple times.  Once I freed myself I ran out of the office.  The trip cause me to sprain me knee.  I limped for four week[s] with a swollen knee.

Compl. at 4-5.  Defendant's description differs substantially:

The Plaintiff had been on sick leave for surgery and had not returned to the office for six weeks, during May and June of 2011.  During that period he had no contact with any of his supervisors or managers beyond dropping off time sheets for "time and attendance" purposes which he did after normal work hours.  Through the course of his absence, management, including myself, unsuccessfully attempted to identify the specifics of the Plaintiff's situation since he had not responded to numerous email and telephone requests to contact management.

On June 21, 2011 the Plaintiff unexpectedly returned to the work place and immediately had a meeting with Mr. Laster.  The Plaintiff was upset concerning the fact that he had not been paid for portions of his absence, in spite of the fact that he failed to submit any work product or properly report to his supervisors during his absence.  Mr. Laster notified me of the Plaintiff's return to the workplace and of their tense meeting.

The Plaintiff knocked on my door and requested to talk to me about an hour after his meeting with Mr. Laster.  The Plaintiff and I spoke for about an hour.  We discussed his medical situation, his failure to report his status to his supervisors following the end of his sick leave period, and his failure to submit work product or contact his supervisor while allegedly tele-working.  This was a private meeting and there were no other witnesses, however the door was open.  There were no raised voices and at no time did I touch, assault, spit upon, kick, hit, or hold the Plaintiff in any manner or in any way.  During and after this meeting I made detailed notes about the substance of our conversation for my own records

and followed them up with an email to the Plaintiff welcoming him back to the office after his surgery.

Def.'s Aff. ¶¶ 7-9.

The parties present dissimilar descriptions of another incident on September 26, 2011. Plaintiff alleges that defendant "kicked, elbowed, spit on, and pushed" him, and when plaintiff "attempt[ed] to leave the premise[s], . . . he literally chase[d]" plaintiff to the exit.  Compl. at 5. Defendant represents that plaintiff "caused a scene with Mr. Laster" on that day, Def.'s Aff. ¶ 10, with "numerous staff observing" the encounter, *id.* ¶ 11, culminating with plaintiff "yelling at . . . and approaching [defendant]," bumping defendant's chest, *id.*  Defendant concurs that he "followed [plaintiff] to the exit of the building."  *Id.* ¶ 12.  Defendant further represents that plaintiff returned to Mr. Laster's office shortly after this encounter.[1]  *Id.* ¶ 13.

In this action, plaintiff demands damages as compensation for costs associated with medical treatment and lost wages, among other things.  *See* Mot. of Troy Marcello Tolson for TRO at 2; *see also* Mot. of Troy Marcello Tolson for PI at 2.  He also asks that the Court "demand a stop to committing [this] behavior," issue a "stay-away order," and require defendant to "give up any firearms" he may have.  Mot. of Troy Marcello Tolson for TRO at 2.

## II.  DISCUSSION

"The standard for issuance of the extraordinary and drastic remedy of a temporary restraining order or a preliminary injunction is very high . . . and by now very well established." *RCM Techs., Inc. v. Beacon Hill Staffing Grp., LLC*, 502 F. Supp. 2d 70, 72-73 (D.D.C. 2007) (internal quotation marks and citation omitted); *see Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997).  "To prevail, [plaintiff] must demonstrate 1) a substantial likelihood of success on the

---

[1]     Mr. Laster subsequently "started disciplinary action against the Plaintiff for his disruptive behavior and other good cause."  Def.'s Aff. ¶ 14.

merits, 2) that [he] would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995) (citation omitted); *see Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 842-43 (D.C. Cir. 1977).

These factors once were examined on a "sliding scale," such that a particularly strong showing on any one factor relieved the movant of an obligation to make as strong a showing on another. *See Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009). "For example, if the movant makes a very strong showing of irreparable harm and there is no substantial harm to the non-movant, then a correspondingly lower standard can be applied for likelihood of success." *Id.* at 1292. This approach may no longer be appropriate in light of the Supreme Court's decision in *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7 (2008), which suggests that the four factors be treated independently. *See Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011) ("[W]e read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'") (quoting *Davis*, 571 F.3d at 1292). In any event, an intrusion "into the ordinary litigation process by issuing a preliminary injunction" is not warranted if the movant fails to "make a substantial showing of likelihood of success on the merits and . . . make a showing of at least some injury." *Allina Health Servs. v. Sebelius*, 756 F. Supp. 2d 61, 65 (D.D.C. 2010) (citing *CityFed Fin. Corp.*, 58 F.3d at 746).

Likelihood of Success on the Merits

Defendant argues that plaintiff cannot demonstrate his likelihood of success on the merits because (1) he has not exhausted his administrative remedies pursuant to the Federal Tort

Claims Act ("FTCA"), *see* 28 U.S.C. § 2675, (2) the alleged torts do not fall within the FTCA's limited waiver of sovereign immunity, and (3) his claims are barred under the Federal Employees Compensation Act ("FECA"), *see* 5 U.S.C. § 8101 *et seq.*

Attached to defendant's opposition is a certification that defendant "was acting within the scope of his employment for the Department of Allegation at the time of the allegations stated in the complaint."  Notice of Removal, Ex. B (Certification).  Accordingly, defendant understands the complaint to allege common law tort claims against him in his official capacity, which, he argues, must be brought against the United States under the Federal Tort Claims Act ("FTCA").  *See* Notice of Removal of a Civil Action ¶ 3 (citing 28 U.S.C. § 2679(d)).   In this scenario, two fatal pleading defects are apparent: plaintiff neither has named the United States as a party defendant, *see Cox v. Sec'y of Labor*, 739 F. Supp. 28, 29 (D.D.C. 1990) (dismissing complaint for lack of subject matter jurisdiction where plaintiff elected to sue the Secretary of Labor in her official capacity rather than the United States itself), nor shows that he has exhausted his administrative remedies prior to filing this action, *see McNeil v. United States,* 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.  Because petitioner failed to heed that clear statutory command, the District Court properly dismissed his suit.").  Had plaintiff named the proper party defendant, the FTCA's exhaustion requirement is jurisdictional, *see GAF Corp. v. United States*, 818 F.2d 901, 917-20 (D.C. Cir. 1987), and his apparent failure to pursue an administrative remedy still undermines any attempt to show a likelihood of success on the merits for the purpose of obtaining injunctive relief.[2]

---

[2]     A search of the Division of Business and Administrative Law, Office of General Counsel, at the Department of Education, "the repository responsible for all claims filed under the [FTCA]

Even if plaintiff had exhausted his administrative remedies under the FTCA, his claims are subject to dismissal on an alternative basis. The FTCA operates as a limited waiver of the government's sovereign immunity, *see, e.g., Richards v. United States*, 369 U.S. 1, 6 (1962), and it expressly excludes claims "arising out of assault [and] battery." 28 U.S.C. § 2680(h); *see Koch v. United States*, 209 F. Supp. 2d 89, 94 (D.D.C. 2002) (concluding that "claim for assault is not cognizable under the FTCA" and must be dismissed for lack of jurisdiction), *aff'd*, No. 02-5222, 2002 WL 31926832 (D.C. Cir. Dec. 31, 2002) (per curiam).

Lastly, defendant contends that the plaintiff's tort claims are barred under the FECA, which "was designed to protect the Government from suits under statutes, such as the [FTCA], that had been enacted to waive the Government's sovereign immunity." *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983). The FECA offers the exclusive remedy for a claimant to whom the United States is liable for a federal employee's workplace injury, *see Briscoe v. Potter*, 355 F. Supp. 2d 30, 42 (D.D.C. 2004) (declining to extend *Bivens* remedy to postal workers potentially exposed to anthrax at a United States Postal Service facility where the FECA was among the "numerous avenues of relief for the underlying harm" available). A claimant must "file certain forms to initiate a claim for injury arising in the workplace," Young Aff. ¶ 6, and plaintiff has not done so, *id.* ¶¶ 6-8.

Irreparable Injury

This Circuit sets "a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "[T]he injury must be both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). For purposes of this motion, the

---

against [the Department] and its employees, Def.'s Mem., Aff. of Eric J. Young ¶ 2, found no "record[] . . .for any claim filed by Plaintiff Troy Marcello Tolson," *id.* ¶ 3.

Court accepts as true plaintiff's factual allegations, particularly the allegations of physical threats and ongoing stalking behavior, and deems them a sufficient showing of irreparable injury.

Injury to Interested Parties and Public Interest

Plaintiff does not address the third and fourth factors at all, while defendant contends that granting injunctive relief not only would cause "[g]reat harm . . . to the Government and [defendant]," Def.'s Mem. at 7, but also would serve no public interest. *Id.* at 8. According to defendant, the government should not be forced "to make restitution without a hearing on any actual loss suffered by [p]laintiff," *id.* at 7, or to "change security methodologies," *id.*, or to face court-ordered injunctive relief "in every instance in which a management official took an action," *id.* at 7-8, not to the employee's liking. And in light of the "nebulous allegations" of plaintiff's complaint, *id.* at 8, defendant argues that the public interest is not served by granting the relief sought, which is in the nature of a writ of mandamus dictating the terms of the "relationship between [p]laintiff and coworkers." *Id.* at 9. Based on the parties' representations, the Court cannot conclude that "the balance of the equities tips in [plaintiff's] favor." *Goings v. Court Servs. & Offender Supervision Agency*, 786 F. Supp. 2d 48, 59 (D.D.C. 2011).

Injunctive relief is an extraordinary remedy which the Court cannot grant absent a clear showing of plaintiff's entitlement to it. *See Sherley*, 644 F.3d at 392. Plaintiff fails to make the requisite showing, and, accordingly, his motions will be denied. An Order is issued separately.

DATE: February 22, 2012                                  COLLEEN KOLLAR-KOTELLY
                                                         United States District Judge